Bryan K. RAY, Appellant,

v.

Howard W. ROBINSON, Appellee.

No. 6711.

Court of Civil Appeals of Texas.

Texarkana.

May 13, 1954.

Rehearing Denied Sept. 16, 1954.

Saunders & Thurmond, Tyler, for appellant.

Lawrence & Lawrence, Tyler, for appellee.

FANNING, Justice.

Appellee Robinson sued appellant Ray for commissions on various sales of rose bushes. He further specifically alleged that Ray was due him commissions of $5,270 (less $500 previously advanced him by Ray) on sales to Sherman Townsend of Salisbury, Maryland. Ray answered that their agreement was one of brokerage and that he had received a written order from Townsend for $36,247.30 worth of

bushes but that. Townsend was to pay cash at the time the roses were to be shipped, which he alleges was to be between the dates of March 1st and April 1st, 1952. Ray further alleged that he received no shipping instructions until 11:32 P.M. of March 31, 1952, and further alleged that no money was sent, and alleged that he owed no commissions.

Thirteen issues were submitted to the jury which answered issues Nos. 1 and 3, and Robinson dismissed a part of his petition (wherein he had sought recovery on sales other than the Townsend sale), amended his petition (wherein he specifically sought recovery of commissions on the Townsend sale) and the court on the answers of the jury and on additional findings and considerations entered judgment for Robinson for the sum of $3,270.50 against appellant.

Appellee, among other things, relied upon the following written instrument (Plaintiff's Exhibit No. 4) addressed to Robinson, which reads in part as follows: "Ray's Rose Nursery of Swan, Texas,

agrees to pay you for the Roses which you have sold to Townsend Nurseries Inc., Salisbury, Maryland as follows.

Single wrap #1 Standard Variety......... 11½¢ each
Single wrap #1 " Patents......... 11½¢ "
 " wrap #1 Blaze....................... 14½¢ "
Three in one wrap #1½ Standard......... 16¾¢ "
 " " " #1½ Blaze................... 24¢ "

It is understood these prices include delivery to Salisbury, Maryland. All cost of delivery to be borne by you regardless of whether shipment is made via Rail or Truck.

Ray's Rose Nursery
Accepted: By Bryan K. Ray.
Howard Robinson."

This instrument was not dated. Robinson testified it was executed about two weeks after January 2, 1952. Ray testified that it was executed on November 14, 1951.

Plaintiff's exhibits 1a to 1f inclusive, consisting of six carbon copy sheets in a Ray's Rose Nursery Order Book of the original order from Townsend in question here, read in part as follows:

"Order
Ray's Rose Nursery
Tyler, Texas

From—Townsend Nurseries Inc. Date—Jan. 2, 1952.
Street—Vine St. Extension City—Salisbury State—Md.
When Ship—Mar. 1 to Apr. 1, 52 How ship—Prepaid Motor Truck" * * *

Here follows a list of the items ordered * * * Each of the six pages are signed by Townsend Nurseries Inc. by Sherman Townsend. We quote from the last page in part as follows: "Last page order complete. Seller to furnish Electroplates 2000.00 to be deducted from last delivery. Terms— Net cash on delivery—

Total ............ $36,247.30
Less amount paid; 2,000.00
Balance due on delivery. $34,247.30
(S) Townsend Nurseries Inc
Sherman Townsend."

The evidence further shows that Townsend paid Ray $2,000 at the time of the order. It will also be noted that the above order provides for the payment of the balance of $34,247.30 cash on delivery, and does not provide for Townsend to "send the money with shipping instructions" as contended by appellant Ray.

On March 31, 1952, at 11:09 P.M. at Salisbury, Maryland, Townsend telegraphed Ray giving him shipping instruc-

tions on the order involved here. The contents of the telegram was telephoned to Ray at Swan, Texas, by the telegraph company in Tyler, Texas, at 11:23 P.M. on March 31, 1952. Robinson testified that on the morning of April 1st, 1952, Ray told him about receiving the phone call from Western Union the night before with reference to the Townsend telegram and that Ray requested him to get the telegram for him, which he did that morning. Robinson further testified that he saw Mr. Ray that morning type out a message in answer to the Townsend telegram which he handed to Robinson with instructions to take to the telegraph company to send to Townsend and to charge it to Ray at Swan, Texas, which Robinson testified he did as requested by Ray. Robinson further testified that he made a pencil copy of Ray's telegram to Townsend at the time, and that Ray's telegram read as follows: "Acknowledge receipt of your wire of March 31st containing varieties. Shipment is being prepared today less United States Patent roses of Jackson and Perkins which we do not carry. Will wire when shipment leaves here. Ray's Rose Nursery."

H. M. Gresham, Manager of the telegraph office in Tyler, Texas, produced the original typewritten message of April 1st, 1952, which was deposited for transmission addressed to Townsend and signed "Ray's Rose Nursery," and which contained the identical wording as testified to by Robinson and as quoted above. He further testified that the telegram was charged to Ray's Nursery and that the nursery paid the charges. Ray denied writing the telegram or that he authorized it to be sent. Robinson's testimony was as above stated, to the effect that Ray typed out the telegram and directed Robinson to take it to the telegraph office for transmission to Townsend, which he testified that he did.

Special issue No. 1 which the jury answered "Yes," reads as follows: "Do you find from a preponderance of the evidence that Plaintiff's Exhibit No. 4 sets out the terms of the agreement between the plain-tiff and the defendant as to the payment of commissions on the order for rose bushes dated January 2, 1952, by Townsend Nurseries as identified in plaintiff's Exhibit No. 1a, through 1f?"

Special issue No. 3 which the jury answered "Yes," reads as follows: "Do you find from a preponderance of the evidence that defendant wilfully failed to fill the order of Townsend Nurseries as set out in the telegram of March 31, 1952, identified as Plaintiff's Exhibit No. 8 herein?"

Robinson also testified with respect to the usual, reasonable and customary charges for freight transportation of rose bushes by rail and truck from Tyler, Texas, to Salisbury, Maryland; that it would take three rail or box cars at around $500 per rail car and that it would take 5 truck loads at around $450 per motor truck load to transport the Townsend order from Tyler to Salisbury.

Appellant's first point is as follows: "The error of the court in overruling appellant's motion before the trial began to instruct counsel for plaintiff not to ask or allude to a purported telegram allegedly sent by appellant to Sherman Townsend."

Appellant's second point is as follows: "The error of the court in permitting appellee's counsel to prove by the witness H. M. Gresham that Ray's Rose Nursery had sent a telegram to Townsend Nurseries on April 1, 1952."

Appellant denied the sending of the April 1 telegram to Townsend and denied authorizing the sending of same. However Robinson testified positively that Ray personally typed out the message to be transmitted to Townsend and that Ray personally directed him (Robinson) to take the message to the telegraph office and have it transmitted to Townsend and to charge the message to Ray's account at Swan, Texas, which Robinson testified that he did. The testimony further shows that Mr. Gresham, the manager of the telegraph office received the message

and transmitted same on April 1, 1952. The original message which was filed for transmission was introduced in evidence and the testimony shows that this message and the message which appellee testified was written by appellant are one and the same. Appellant had previously testified that he did not deliver the roses specified in the telegram of March 31, 1952, because it was physically impossible to get them out according to the contract and in view of this testimony we think the telegram of April 1, 1952, to the effect that Ray acknowledged the wire of March 31, 1952, and that the shipment was being prepared that day and that he would wire when the shipment left Tyler, was highly material to the issues involved in this controversy. The purpose of this testimony was not to prove that Townsend had received the telegram of April 1, 1952, but was to prove that Ray had acknowledged receipt of Townsend's telegram of March 31, 1952, and was undertaking to perform the contract by agreeing to ship the roses which had been ordered. Appellant has cited many cases dealing with the admissibility of telegrams or copies of telegrams in evidence. The case of Western Union Telegraph Co. v. Kapp, 35 Tex.Civ.App. 663, 80 S.W. 840, which holds that secondary evidence of the contents of a telegram was inadmissible where loss or inability to produce the original was not shown, and other cases of similar import cited by appellant, are not applicable to the case at bar. In the instant case the question is whether appellant authorized and directed appellee to send such a telegram, whether such a telegram was so sent, and what were the circumstances of the presentment of the telegram for transmission. There was no question involved as to whether the telegram had actually been delivered to Townsend. Here we think that the typewritten message which was presented for transmission would be the original, admissible in evidence and highly pertinent on the issue of whether Ray wilfully failed to fill the order in question. We overrule appellant's first and second points.

■ Appellant's third point is as follows: "The error of the court in allowing counsel for plaintiff to prove, over appellant's objection, by cross examination that a later sale of rose bushes was made between Townsend Nurseries and appellant after his time for purchase and order given had expired because it would be a novation or new contract." Appellant makes no citation to the statement of facts to support his third point covering the later sale, nor does he cite any authorities on this proposition, as outlined by Rule 418, Texas Rules of Civil Procedure. However we have checked the statement of facts and have reached the conclusion that the evidence complained of (a later sale in May, 1952) was material to the issue of whether appellant had wilfully failed to fill the Townsend order in question. We overrule appellant's third point.

■ Appellant's fourth point is as follows: "The error of the court in allowing a telegram, introduced over appellant's objection that it would represent a new contract, which telegram was from Townsend Nurseries to appellant and subsequent to expiration of purchase date of agreement sued on." The order from Townsend in question consisting of six pages has at the top of each page "When ship? Mar. 1 to April 1, 1952." There is nothing in the written order to the effect that Townsend Nurseries must furnish shipping instructions. However, on March 31, 1952, Townsend did telegraph shipping instructions (which was received by Ray at 11:23 P.M. on March 31, 1952), and on April 1, 1952, under testimony in this case, Ray acknowledged receipt of the wire of March 31, and authorized and directed the transmission of the telegram to Townsend stating that he was preparing the roses for shipment and would wire him when they were sent. In Francis v. Foster, Com.App., 113 Tex. 521, 260 S.W. 1023, it was held that where a broker procured purchasers with whom seller entered into a contract whereby seller received part of the purchase price at date of contract with the balance to be paid

on delivery of the stock, the broker was not precluded from recovering commissions because at date of delivery the purchasers were not financially able to pay for the property purchased. We quote from the court's opinion in this case, as follows: " 'If the principal and the customer found by the broker enter into a valid contract, and the broker acts in good faith, the broker is not deprived of his right to a commission by the fact that the customer fails or is unable to carry out the contract, such as a contract of purchase or a contract of exchange.' 9 C.J. 631. This text is upheld by many decisions from various states cited in the notes to the text. In the case of Keener v. Cleveland [Tex. Com.App.,], 250 S.W. 151, Judge German of the Commission of Appeals of Texas, used the following language: 'And where the seller accepts the purchaser tendered, it is not necessary to show that he was ready, willing, and able to buy,'—and several cases are there cited to uphold said statement. The only exception to this rule seems to be where the purchaser was not able to perform, and that fact was known by the agent, but there is nothing in the case before us, either in the certified question nor in the opinion by the court, to disclose that the agent knew that the purchaser was not able to perform on the date that the contract was entered into, nor for that matter is there any positive evidence that shows that the purchaser was not able to perform on the date that he entered into the contract with the seller." Under this record appellant entered into a firm contract with Townsend, accepted him as a purchaser, received $2,000 from him as a part of the purchase price of the roses, with the balance to be paid cash on delivery. There is nothing in the record to show that appellee knew whether Townsend could or could not perform on the date that the contract was entered into. We overrule appellant's fourth point.

We have also carefully considered appellant's other points and are of the opinion that same are without merit, and we respectfully overrule same.

The judgment of the trial court is affirmed.

### On Motion for Rehearing

Appellant in his motion for rehearing, among other things, complains because this Court did not specifically write upon several of his numerous points. One of which is point 8, reading as follows: "The error of the court in not allowing proof by appellant as to appellee's knowledge that Townsend was not financially able to purchase the rose bushes of appellant, as being a ready, willing and able purchaser." With reference to this matter we quote from the statement of facts (on cross-examination of appellee Robinson) on pages 80 to 83, inclusive, as follows:

"Q. Subsequent to securing this purported purchase order here, did both you and Mr. Ray determine that Townsend Nurseries was not financially able to buy the roses they had ordered? A. No, sir, we did not.

"Q. At any time after this particular order, did Townsend Nurseries attempt to get you to accept a note for $2,000.00 which they stated would be a negotiable note? A. Mr. Ray—

"Q. You can answer that yes or no, I believe, sir. Did you get such a note? A. Through the mail, yes, sir.

"Q. As a result of securing that note through the mail, did you and Mr. Ray go to the Lindale Bank at Lindale, Texas, to determine if that note was a bankable or negotiable note? A. I went with Mr. Ray to the Lindale State Bank to find out something about the note, yes, sir.

"Q. As a result of having gone to the Lindale Bank, did you find out, at that time, that such note was not a bankable note and not so considered by the bank in Salisbury, Maryland? A. I am confused with the term 'bankable' note.

"Q. I will put it this way— A. Very difficult for me to answer, Mr. Saunders.

"Q. I don't want to confuse you, and will put it this way: As a result of giving

that note, a note able to be considered as a bankable note is one that you could discount or sell or assign at a bankable institution. A. I understood that is what Mr. Ray wanted to do.

"Q. Could he do that? A. The bank that that was drawn on in Salisbury, Maryland was—my understanding, the Bank called and asked if they would discount the note and send the money to Mr. Ray, and my understanding was the bank in Salisbury refused.

"Q. At that time, did you find out in any manner so that the knowledge was brought home to you and to Mr. Ray that Townsend Nurseries was not a solvent company and that they had judgments against them? A. No, sir.

"Q. Did you, thereafter, through Mr. Vanberg find out they had judgments against them?

"Mr. Lawrence. That would be hearsay statement and would not be proof on the matter, and mere conjecture of the third party whom we have not had opportunity to cross-examine.

The Court. Sustain.

"Q. Do you now have knowledge regardless of the source you secured it from, that Townsend Nurseries in the fall of 1951 had judgments against them? A. Nothing other than from what Mr. Ray told me.

"Q. You now know they have, subsequently in June of 1952, taken bankruptcy, do you not? A. No, sir, I do not.

"Q. You don't know that? A. No, sir.

"Q. Do I understand you to say Mr. Vanberg of the Mahon Color Press didn't tell you they had judgments against them?

"Mr. Lawrence. Council is repeating a question the Court has ruled on.

"The Court. Sustain as to what a third party told him.

"Q. You so testified in your deposition, didn't you?

"Mr. Lawrence. We all know we take depositions when The Court is not present and objections not made, and because Counsel asks a question does not make it admissible and we ask that counsel be instructed not to repeat the question.

"The Court. You make the same objections now?

"Mr. Lawrence. Yes, sir, and because he asked the question in his deposition doesn't make it admissible.

"The Court. Sustain the objection.

"Q. You say Mr. Ray told you had judgments against him? A. Yes, sir.

"Q. Then you did have knowledge, after receiving that order, that Townsend Nurseries had judgments against them and was not a solvent ready, willing and able buyer?

"Mr. Lawrence. Object. The mere fact that one of the parties told another might be what he thought but no knowledge the concern is insolvent. The question is not proper and we object.

"The Court. Sustain. The jury has the testimony what Mr. Ray told him and whether a fact would be a matter for the jury to determine.

"Mr. Saunders. Before a broker is entitled to commission, he would have to secure a ready, willing and able buyer, financially able, and the purpose of this testimony is to show that. We except to the ruling of the Court.

"The Court. I have ruled. You may have your exception." (Emphasis ours).

 It is clearly apparent from the above testimony given and the testimony sought to be elicited that appellee Robinson did not have any knowledge, *at the time the contract between Townsend and Ray was entered into* that Townsend could not perform his contract. In fact, any alleged information that Robinson got to that effect was given him by hearsay *subsequent* to the date of the contract. Robinson further testified directly that subsequent to the order in question he did not know that Town-

send was not financially able to buy the roses they had ordered and he did not have knowledge *now* (at the time of the trial) that Townsend Nurseries in the fall of 1951 had judgments against them, except as to what Mr. Ray, the appellant, told him. The record does not show that Robinson had any prior knowledge of any alleged financial inability of Townsend to perform the contract at the time it was executed, and we further think that the record clearly reflects that Robinson acted in complete good faith in securing the order in question. We think it is also clear from the record that appellant Ray entered into a firm contract with Townsend, accepted him as a purchaser, received $2000 from him as a part of the purchase price of the roses, with the balance to be paid cash on delivery. The jury further found, upon evidence we deem sufficient, that the appellant Ray wilfully failed to fill the Townsend order. The record also shows that Ray made a later sale of roses to Townsend in May, 1952 (on which sale Robinson, of course, received no commission) which we think was highly material on the issue of whether Ray wilfully failed to fill the earlier Townsend order in question on which Robinson claimed commissions. We think the trial court correctly excluded the hearsay testimony above outlined. We specifically overrule appellant's eighth point under the following authorities cited in the original opinion of this Court, to-wit: Francis v. Foster, Com.App., 113 Tex. 521, 260 S.W. 1023; Keener v. Cleveland, Tex.Com.App., 250 S.W. 151; and 9 Corpus Juris 631; 12 C.J.S., Brokers, § 95.

We have also carefully considered appellant's motion for rehearing and all of his other contentions, and have concluded that our original opinion is correct. All points not specifically written upon are without merit and are overruled.

Appellant's motion for rehearing is in all things overruled.

HALL, C. J., and WILLIAMS, J., concur.